IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THOMAS L. TAYLOR III, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:19-CV-1594-D |
| VS. § | |
| § | |
| ROTHSTEIN KASS & COMPANY, § | |
| PLLC, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this action by Thomas L. Taylor III ("Taylor"), a court-appointed temporary receiver, involving claims for negligence, breach of fiduciary duty, fraud, and fraudulent transfers, defendants Rothstein, Kass & Company, PLLC and Brian Matlock (collectively, "Rothstein Kass") move to dismiss for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion in part and denies it in part and grants Taylor leave to replead.

I

In June 2016 the Securities and Exchange Commission filed a civil enforcement action against Christopher A. Faulkner ("Faulkner"), President and Chief Executive Officer of Breitling Energy Corporation ("BECC"), and others, alleging that Faulkner and his codefendants orchestrated a massive fraudulent scheme through the offer and sale of

securities to public investors.[1]  This court appointed Taylor as temporary receiver for the estates of Faulkner, BECC, Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC") (collectively, the "Audit Entities"), and their alleged alter egos Crude Energy, LLC, Crude Royalties, LLC, and Patriot Energy, Inc., among others (collectively, with the Audit Entities, the "Breitling Entities").

Between 2011 and 2016, Faulkner used the Breitling Entities to raise approximately $150 million in gross proceeds from investors through the offer and sale of oil and gas-related securities.  Faulkner misappropriated approximately $32.8 million of the Breitling Entities' funds through the receipt of transfers and the payment of personal expenses from company bank and credit card accounts.  As part of his alleged fraudulent scheme, Faulkner took BOG and BRC public through a reverse merger transaction, wherein BOG and BRC merged into BECC, a publicly-traded entity.  In preparation for the reverse merger and related public filings, the Audit Entities engaged Rothstein Kass to audit BOG's and BRC's financial statements for 2011 and 2012.  Despite myriad alleged red flags, including materially misleading cost estimates in private placement memoranda, commingling of investor proceeds, overselling of interests in numerous offerings, massive reimbursements to Faulkner, and the absence of internal controls, Rothstein Kass issued an unqualified,

---

[1]The court recounts the background facts favorably to Taylor as the nonmovant.  In deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

"clean" audit opinion regarding the Audit Entities' annual financial statements on April 14, 2014. From December 2013 to February 2016, BECC raised $68.5 million, $18.5 million of which Faulkner misappropriated.

Taylor filed this lawsuit against Rothstein Kass, asserting claims for negligence; aiding, abetting, or participation in breaches of fiduciary duties; aiding, abetting, or participation in Faulkner's fraudulent scheme; and fraudulent transfers. Rothstein Kass moves to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Taylor has failed to state a claim on which relief can be granted. Taylor opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Taylor must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The court begins with Rothstein Kass's contention that Taylor's negligence and gross negligence claims are time-barred.

## A

Limitations is an affirmative defense. *See* Rule 8(c)(1). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (alterations added) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, Rothstein Kass is not entitled to dismissal under Rule 12(b)(6) unless Taylor has "pleaded [him]self out of court by admitting to all of the elements of the defense." *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)).

Under Texas law, the statute of limitations for negligence actions is two years. *See*

Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2017). The "limitations period begins to run when 'the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of his cause of action.'" *Janvey ex rel. Sharp Capital, Inc. v. Thompson & Knight LLP*, 2003 WL 21640573, at *3 (N.D. Tex. July 8, 2003) (Lynn, J.) (quoting *FDIC v. Shrader & York*, 991 F.2d 216, 221 (5th Cir. 1993)); *see also SC & E Admin. Servs., Inc. v. Deloitte*, 2006 WL 6747974, at *7 (W.D. Tex. July 25, 2006) (holding that the discovery rule applies to professional negligence claims against auditors). But if a wrongdoing corporate officer's knowledge of the facts giving rise to the negligence claim is imputed to the corporation, the claim accrues when the officer acquires such knowledge. *See, e.g., Thompson & Knight LLP*, 2003 WL 21640573, at *3 ("[T]o hold that [the receiver's] claim . . . [is] barred by the statute of limitations, the Court would have to hold (1) that [the officer] discovered . . . the facts giving rise to these claims; (2) that [the officer's] knowledge is imputed to [the corporation]; and (3) that certain exceptions . . . do not apply.").

## B

Relying on *FDIC v. Ernst & Young*, 967 F.2d 166, 170-71 (5th Cir. 1992), Rothstein Kass contends that Faulkner's knowledge should be imputed to the Breitling Entities because Taylor's allegations demonstrate that Faulkner conducted a fraud on behalf of the corporation by raising approximately $150 million in gross proceeds, only a portion of which he used to fund his lavish lifestyle. Because Rothstein Kass resigned from the engagement with the Breitling Entities in June 2014, Rothstein Kass asserts that the two-year statute of limitations

for Taylor's negligence claims had already expired by June 2016, over one year before the court's August 14, 2017 order tolling any applicable statute of limitations.

Taylor responds that dismissal based on an imputation theory is not appropriate at the pleading stage. He also contends that Faulkner's knowledge should not be imputed to the Breitling Entities. Relying on *Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 193 (5th Cir. 2013), Taylor maintains that the knowledge of a controlling principal who is engaged in fraud is not imputed to the subordinate entities and that those entities' claims cannot accrue until a receiver is appointed. Further, Taylor asserts that Faulkner acted adversely to the Breitling Entities because he "use[d] and caus[ed] said entities to engage in fraud and violate securities laws and then loot[ed] the entities of the ill-gotten gains." P. Resp. 5. Taylor also invokes the adverse domination doctrine, contending that the statute of limitations must be tolled where the wrongdoing directors constitute a majority of the board and the majority's wrongdoing was intentional.

Rothstein Kass replies that the imputation doctrine is not so limited because it has been applied in contexts when claims have been made against alleged wrongdoers. Rothstein Kass also asserts that adverse domination is inapplicable because, in its view, the doctrine only tolls limitations for claims against wrongdoers who are adversaries in the action, and it is further limited to claims against corporate officers and directors, not auditors.

C

The court holds that Rothstein Kass is not entitled to dismissal based on the statute of limitations because it is not clear from the face of the pleadings that Faulkner's knowledge

should be imputed to the Breitling Entities. Although "the general rule [is] that courts are to impute an officer/director's knowledge to the corporation" so long as "the officer/director is acting on the corporation's behalf[,] . . . there is an exception to imputation." *Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997) (citing *Ernst & Young*, 967 F.2d at 171). Where a "plaintiff can show that the officer/director was acting adversely to the corporation and entirely for his own or another's purpose, the limitations will be tolled." *Id.* (citing *Shrader & York*, 991 F.2d at 222). Courts have refused to impute the knowledge of principals to controlled entities where the officers "allegedly filled their own pockets while fraudulently extending the life of the institution they continued to milk" and where they "systematically looted [the company] of its most profitable and least risky businesses as well as millions of dollars in income[.]" *Askanase v. Fatjo*, 828 F. Supp. 465, 471 (S.D. Tex. 1993) (citing *Schacht v. Brown*, 711 F.2d 1343, 1347-48 (7th Cir. 1983)) (denying motion to dismiss where plaintiffs pleaded that principal looted company to the point of insolvency).

Here, Taylor specifically alleges that "Faulkner was using the Breitling [E]ntities to engage in a fraudulent scheme for his personal benefit" and that he misappropriated the Breitling Entities' funds for his own use. Compl. 2. Because Taylor has pleaded a factual scenario giving rise to an exception to imputation, the court declines to grant dismissal at the Rule 12(b)(6) stage predicated on imputation principles. "[D]ismissal at this juncture would be improper, as it cannot be said that Plaintiffs could prove no set of facts entitling them to relief." *Askanase*, 828 F. Supp. at 471. Moreover, because it "is a factual issue" whether Faulkner acted on behalf of, or against, the Breitling Entities such that his knowledge should

be imputed to them, this question is better decided in the context of a summary judgment motion. *See FDIC v. Nathan*, 804 F. Supp. 888, 894-95 (S.D. Tex. 1992) (noting that the question whether the principal was "acting for or against the [company] [was] a factual issue," and suggesting such questions are properly resolved "on summary judgment.").

The court therefore declines to dismiss Taylor's negligence and gross negligence claims on the ground that they are time-barred.

IV

The court turns next to Rothstein Kass's assertion that Taylor's professional negligence claims must be dismissed for failure to plead causation.

A

"To establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach, as well as privity of contract." *SEC v. Faulkner*, 2019 WL 1040679, at *4 (N.D. Tex. Mar. 5, 2019) (Fitzwater, J.) (quoting *City of Houston v. Towers Watson & Co.*, 2015 WL 5604059, at *4 (S.D. Tex. Sept. 23, 2015)). Moreover, "[u]nder Texas law, a cause of action based upon negligence requires proof of . . . proximate[] caus[e]." *Ernst & Young*, 967 F.2d at 170. "Proximate cause includes two essential elements: (1) foreseeability, and (2) cause in fact . . . . Cause in fact means that the act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred." *Id.* Although "[t]he Texas Supreme Court has not expressly held that injury caused by reliance is a necessary element of negligence," where a plaintiff alleges professional negligence by auditors, "a claim that

- 8 -

reliance is not a component of causation strains credulity." *Id.* This is because if "nobody relied on the audit, then the audit could not have been a 'substantial factor in bringing about the injury.'" *Id.* Thus to survive the motion to dismiss, Taylor must plead sufficient facts to enable the court to draw the reasonable inference that the Breitling Entities relied on Rothstein Kass's audit.

B

Rothstein Kass contends that Taylor has failed to plead any factual allegations that the Audit Entities or the Breitling Entities relied on Rothstein Kass's audited financials or that the financial statements assisted Faulkner in the perpetuation of his fraudulent scheme. Although Taylor does allege that the "Audit Entities relied on the Defendants to conduct this audit," Compl. 2, Rothstein Kass maintains that this allegation is conclusory. Rothstein Kass posits that Taylor could not possibly plead that anyone relied on the audit opinion because it was issued "after BOG and BRC completed their sales of oil and gas interests and, therefore, the audit had no impact on Faulkner's alleged scheme." Ds. Br. 11.

Taylor responds that causation is a question of fact that should not be decided at the pleading stage. Citing several paragraphs of his complaint, Taylor also maintains that he has plausibly alleged that the Breitling Entities relied on the accuracy of the audit opinion. To the extent the court disagrees, Taylor requests leave to amend the complaint to plead that "the Breitling [E]ntities filed Defendants' audit with the SEC as part of [their] 10-K, which some courts have held constitutes sufficient evidence of reliance[.]" P. Resp. 10. Rothstein Kass replies that there are no factual allegations of causation within the complaint and that the

audited financial statements were "entirely irrelevant to the fraudulent scheme" because "the purchasers acquired interests in discrete oil and gas properties—not any stake in the Breitling Entities." Ds. Reply 6.

C

The court concludes that Taylor has adequately pleaded that the Breitling Entities relied on Rothstein Kass's audit of the Audit Entities' financial statements. Taylor alleges that "the Audit Entities engaged Rothstein [Kass] to conduct an audit of BOG and BRC's 2011 and 2012 financial statements, among other things, in anticipation with Faulkner's taking those entities public (as the entity BECC) through a reverse merger[.]" Compl. 2. Taylor also asserts that "the Audit Entities relied on [Rothstein Kass] to conduct this audit," and that Rothstein Kass's negligent actions enabled Faulkner "to continue his use of the Breitling [E]ntities as vehicles for his fraud, thereafter enabling Faulkner to misappropriate more than $18 million in Breitling assets, clouding and risking loss of title to oil and gas-related assets, and exposing Breitling to over $70 million in increased liabilities[.]" Compl. 2, 4. Taylor asserts:

> [i]f [Rothstein Kass] had exercised even a minimum level of the independence, inquiry, and professional skepticism required of independent auditors, then [Rothstein Kass] would have revealed the fraudulent scheme many years ago, saving Breitling tens of millions of dollars in losses that would not otherwise have been incurred and in increased liabilities to other creditors.

*Id.* at 26-27.

The court holds that, at the motion to dismiss stage, Taylor's allegations that the

- 10 -

Breitling Entities relied on the audit opinion, and that, without it, the Breitling Entities would not have continued or incurred the stated damages, satisfy the reliance element of causation. *See, e.g., Resolution Tr. Corp. v. Coopers & Lybrand*, 915 F. Supp. 584, 591 (S.D.N.Y. 1996) (applying Texas law and holding that receiver adequately pleaded reliance by alleging that, if accounting firm's report had been accurate, entity would not have continued in existence and would not have incurred payment obligations of millions of dollars).

Because the court concludes that Taylor has adequately pleaded reliance and causation, it denies Rothstein Kass's motion to dismiss Taylor's professional negligence claim.[2]

V

The court turns now to Rothstein Kass's motion to dismiss Taylor's claim for aiding and abetting or participation in Faulkner's breaches of fiduciary duties.

The Supreme Court of Texas "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting." *First United Pentecostal Church of Beaumont v.*

---

[2]The court rejects Rothstein Kass's contention that "[a]udited financial statements were entirely irrelevant to the fraudulent scheme" because "these purchasers acquired interests in discrete oil and gas properties—not any stake in the Breitling entities." Ds. Reply. 6. Taylor alleges that Rothstein Kass "ultimately issued an unqualified audit opinion of the Audit Entities' financial statements notwithstanding [its] knowledge of assets obtained pursuant to material misrepresentations made to investors in [oil and gas properties] by Faulkner, and the effects of same on Breitling's financial statements." Compl. 15. In other words, the crux of Taylor's theory is not limited to defrauded purchasers of oil and gas properties. Instead, Taylor alleges that the material misinformation that misled private investors also misled public investors because the issues were not disclosed in the clean audit opinion. Taking the allegations as true, as the court must, the court cannot conclude that the audited financial statements were "irrelevant" to Faulkner's fraudulent scheme.

*Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citing *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996)). But the Fifth Circuit has held that "no such claim [for aiding and abetting] exists in Texas" and has refused to recognize such a claim because "a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by state courts." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 782, 781 (5th Cir. 2018) (citing *Johnson v. Sawyer*, 47 F.3d 716, 629 (5th Cir. 1995)).

Taylor's contention that *DePuy*'s holding is limited to "aiding and abetting strict liability" is misplaced. In a case that did not involve strict liability claims, the Fifth Circuit has recently reaffirmed that "aiding and abetting does not exist as a distinct cause of action in Texas." *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, ___ Fed. Appx. ___, 2019 WL 6834031, at *7 (5th Cir. Dec. 13, 2019) (per curiam) (citing *DePuy*, 888 F.3d at 781-82) (analyzing aiding and abetting claims as applied to checking-kiting scheme). For this reason, the court dismisses Taylor's aiding and abetting claims. *See Garcia v. Vasilia*, 2019 WL 4105559, at *11 (S.D. Tex. Aug. 29, 2019) (granting motion for summary judgment on aiding and abetting fraud claim "because no such claim has been expressly recognized by the State of Texas.").[3]

---

[3]Because the court is dismissing the aiding and abetting claims, it need not address Rothstein Kass's argument that Taylor has failed to allege substantial assistance (an alleged element of common law aiding and abetting), or other arguments related to Taylor's aiding and abetting claims.

VI

The court now turns to Rothstein Kass's contention that Taylor's claims for participation in tortious conduct violate Texas' anti-fracturing rule.[4]

A

"Under Texas law, . . . '[w]hether allegations against [a professional], labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *Huerta v. Shein*, 498 Fed. Appx. 422, 427 (5th Cir. 2012) (per curiam) (quoting *Nabors v. McColl*, 2010 WL 255968, at *2 (Tex. App. Jan. 25, 2010, pet. denied)). Texas courts apply "[t]he anti-fracturing rule [to] prevent[] plaintiffs from converting what are actually

---

[4]Although the Supreme Court of Texas has not explicitly recognized a cause of action for aiding and abetting, it does recognize a cause of action for knowing participation in a breach of a fiduciary duty. "[W]here a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)); *see also Milligan, Tr. for Westech Capital Corp. v. Salamone*, 2019 WL 4003093, at *1 (W.D. Tex. Aug. 23, 2019) (collecting cases that explain that "Texas appellate courts have routinely recognized the existence of a cause of action for knowing participation in the breach of fiduciary duty.").

> To establish a claim for knowing participation in breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of a fiduciary relationship.

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (quoting *Meadows*, 492 F.3d at 639). On the other hand, as discussed *infra* at § VII(C), it is not clear that Texas recognizes a cause of action for participation in fraud (i.e., as a joint tortfeasor) that is distinct from a direct claim for fraud or conspiracy.

professional negligence claims against a [professional] into other claims such as fraud, breach of contract, [or] breach of fiduciary duty[.]" *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App. 2010, pet. denied).[5]   Although the anti-fracturing rule "does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty or fraud claim when there is a viable basis for doing so," the plaintiff "must do more than merely reassert the same claim for [professional negligence] under an alternative label." *Huerta*, 498 Fed. Appx. at 427.   He "must present a claim that goes beyond what traditionally has been characterized as . . . malpractice." *Id.*   In other words, "the pleaded facts [viewed] . . . in the light most favorable to [Taylor]" must demonstrate that the "precise character of his [additional] claims" cannot be reduced to mere negligence. *Id.*

## B

Rothstein Kass maintains that all of Taylor's claims focus on the quality or adequacy of its audit, "as demonstrated by the eight discrete areas in which the Receiver alleges that the Defendants failed 'to exercise the degree of care, skill and competence that reasonably competent members of their profession would exercise under similar circumstances[.]'" Ds. Br. 16.  Rothstein Kass asserts that, at their core, the claims are for professional negligence and therefore cannot be fractured into other claims, such as for participation in fraud or for

---

[5]Although courts typically apply the rule to legal malpractice claims, Texas courts have also applied the anti-fracturing rule to claims against auditors. *See, e.g., J.A. Green Dev. Corp. v. Grant Thornton, LLP*, 2016 WL 3547964, at \*8 (Tex. App. June 28, 2016, pet. denied) ("[T]he focus of [plaintiff's] allegations is on the adequacy of its representation by [his attorney] and [the auditor], and that is a professional negligence claim.").

breaches of fiduciary duties.

Taylor responds that Rothstein Kass "knew of a plethora of financial and accounting wrongdoing by Faulkner, including outright fraud on investors, yet . . . proceeded to issue a clean audit for the Breitling [E]ntities anyway." P. Resp. 16. From these allegations, Taylor asserts that a jury could reasonably find that Rothstein Kass's conduct gives rise to negligence, participation in a breach of fiduciary duties or a fraudulent scheme, or both. Taylor posits that because Texas law permits a jury to be charged as to all claims, the anti-fracturing rule does not bar his additional claims.

## C

The court concludes that Taylor has "present[ed] a claim that goes beyond what traditionally has been characterized as . . . [negligence]," and therefore his additional claim for participation in breaches of fiduciary duties is not a fractured professional negligence claim. *Huerta*, 498 Fed. Appx. at 427. Taylor alleges that, despite Rothstein Kass's knowledge of the fraud or red flags that put it on notice of the truth, Rothstein Kass issued a clean audit opinion that did not adequately or accurately represent the true condition of the Audit Entities. Taylor asserts that, in December 2013, "less than three months into Rothstein[] [Kass's] audit of the Audit Entities—[Rothstein Kass] had knowledge sufficient to place [it] on notice of the true nature of Faulkner's conduct and his abuse of the [Breitling] Entities in furtherance of his own financial interests." Compl. 13. Taylor further alleges eight specific issues known to Rothstein Kass to support his contention that Rothstein Kass had knowledge that it "could not issue any unqualified opinion with respect to financial

statements" based on illicit revenues, among other issues. *Id.* at 23.

These pleaded facts demonstrate that Taylor has not simply recast, and thereby fractured, a professional negligence claim based on what Rothstein Kass allegedly failed to do. Instead, Taylor's allegations that Rothstein Kass issued an unqualified opinion despite knowledge of its falsity exceed what is typically characterized as negligence, and, at a minimum, give rise to a separate claim for participation in breaches of fiduciary duties. *See, e.g., Bonner v. Henderson*, 2001 WL 301581, at *5 (Tex. App. Mar. 29, 2001, pet. denied) (not designated for publication) (holding that "allegations that [the auditor] prepared annual audit reports that falsely presented . . . the financial condition of [the trust]" and that the auditor "concealed . . . illegal compensation received by [the trustee]" were sufficient to "support a claim that [the auditor] assisted [the trustee] in breaching his fiduciary duties."). Because Taylor's allegations based on the issuance of the clean audit present "a viable basis" for "pursuit of a negligence-based malpractice claim" based on what Rothstein Kass allegedly failed to do, and for "a separate breach of fiduciary duty or fraud claim," the court concludes that Taylor's claims do not violate the prohibition on fractured claims. *Huerta*, 498 Fed. Appx. at 427. The court therefore declines to dismiss Taylor's claims for participation in tortious conduct based on the anti-fracturing rule. *See, e.g., Mia Reed & Co. v. United Fire & Cas. Co.*, 2012 WL 2499932, at *6 (S.D. Tex. June 27, 2012) (declining to apply anti-fracturing rule to grant Rule 12(b)(6)-based motion to dismiss where defendants did not "establish[] that [plaintiff's] breach of fiduciary duty claim must, as a matter of law,

be brought as a negligence claim.").[6]

VII

The court next addresses Rothstein Kass's contention that Taylor's claim that Rothstein Kass participated in Faulkner's fraudulent scheme claim must be dismissed for lack of specificity.

A

The elements of common law fraud in Texas are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater, C. J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004) (Texas law) (citations omitted)), *aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015). Under Texas law, "[e]ach party to a fraudulent scheme is responsible for the acts of the others done in furtherance of the fraudulent scheme." *Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. Civ. App. 1979, writ ref'd n.r.e.) (citing *Foix v. Moeller*, 159 S.W. 1048, 1052 (Tex. Civ. App. 1913, writ ref'd)). And "all who participate are liable for the fraud[.]" *Id.* (citation omitted). A party may also become liable for fraud without making any

---

[6]Because defendants have not specifically challenged Taylor's participation in breaches of fiduciary duties claim on any basis other than the anti-fracturing rule, the court declines to dismiss the claim.

fraudulent representations where he "allegedly participated in the fraudulent transactions and reaped the benefits." *In re Arthur Andersen LLP*, 121 S.W.3d 471, 481 (Tex. App. 2003, no pet.).

"[S]tate law fraud claims," including allegations that a party "participat[ed]" in fraud, "are subject to the heightened pleading requirements of Rule 9(b)." *Halprin v. FDIC*, 2016 WL 5718021, at *3 (W.D. Tex. Sept. 30, 2016) (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010)). "Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

B

To plead a claim that Rothstein Kass is liable for "participation in a fraudulent scheme," Taylor alleges that "[Rothstein Kass's] services assisted the fraudulent scheme that enabled . . . Faulkner to fraudulently offer securities to public investors" and "caused these

entities to suffer additional losses . . . and incur millions of dollars of increased liabilities." Compl. 30. Taylor asserts that "[a]s a result of this conduct, [Rothstein Kass is] directly liable for fraud[.]" *Id.*

Rothstein Kass contends that "[t]o the extent the Receiver intended this claim to assert direct liability for fraudulent conduct by either Defendant, the Receiver has utterly failed to set forth . . . any allegations identifying Defendants' specific fraudulent conduct." Ds. Br. 21. Rothstein Kass contends that because the allegations involve what Rothstein Kass "failed" to do in conducting the audit and what it "should have" done, these "actions or omissions do not rise to the level of fraud," and the allegations are insufficient to meet the heightened pleading burden for fraud under Rule 9(b). *Id.*

Taylor responds that his claim "is not a direct claim for fraud[.]" P. Resp. 22. He maintains that "it has long been the law in Texas that 'each party to a fraudulent scheme is responsible for the acts of the other participants done in furtherance of the scheme and liable for fraud.'" *Id.* Thus Taylor contends that his claim is "a joint tortfeasor claim, with the primary fraud committed by Faulkner and the other Breitling directors and officers[.]" *Id.*

C

As a preliminary matter, because Texas does not explicitly recognize a cause of action for aiding and abetting fraud, it is not clear that Texas law recognizes a cause of action for "participation in fraud" that is separate from a direct claim for fraud or conspiracy.[7] In other

_____

[7]The oft-cited principle that "[e]ach party for a fraudulent transaction is responsible for the acts of others done in furtherance of the fraudulent scheme" was announced in the

words, it is questionable whether, to plead a plausible "joint tortfeasor claim" for fraud, it is sufficient to allege that a third party "assisted" or "participated" in another's fraud without adequately pleading that the third party himself engaged in fraudulent conduct with the requisite knowledge and intent. The court therefore holds at this preliminary stage that, for Taylor to adequately plead that Rothstein Kass is jointly liable for Faulkner's fraud by participating in his fraudulent scheme, Taylor must plausibly plead that Rothstein Kass itself engaged in fraud—i.e., Taylor must satisfy the requirements of Rule 9(b) as to Rothstein Kass directly, and not merely as an alleged joint tortfeasor.

Here, Taylor neither explicitly addresses the elements of fraud nor makes clear which of Rothstein Kass's representations or omissions gives rise to fraud as opposed to negligence. Instead, Taylor contends that "the Complaint is replete with specific allegations describing Faulkner's use of the Breitling [E]ntities to engage in fraudulent scheme." P. Resp. 22. But allegations of *Faulkner's* fraudulent actions are insufficient to hold Rothstein Kass liable for fraud absent specific allegations of *Rothstein Kass's* fraudulent intent and conduct. Thus although several of Taylor's allegations, including the issuance of a "clean" audit opinion despite Rothstein Kass's knowledge of issues to the contrary, may suggest that Rothstein

---

context of aiding and abetting and conspiracy claims. *See, e.g., Crisp v. Sw. Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. Civ. App. 1979, writ ref'd n.r.e.) (citing *Foix v. Moeller*, 159 S.W. 1048, 1052 (Tex. App. 1913, writ ref'd)) (analyzing sufficiency of evidence to support aiding and abetting claim). Some courts that refer to "participation in fraud" outside the aiding and abetting context require the plaintiff to plead the elements of common law fraud. *See, e.g., Matis v. Golden*, 228 S.W.3d 301, 310 (Tex. App. 2000, no pet.). If further developments in Texas law support Taylor or Rothstein Kass, the court will of course apply them to future decisions in this case.

Kass acted with intent to defraud, Taylor's failure to plead the elements of fraud, including which representations were material, false, and made with fraudulent intent to induce action or reliance, means that he has failed to satisfy Rule 9(b). *See, e.g., Corley v. Se. Metals Mfg. Co.*, 2011 WL 3665015, at *7 (W.D. La. Aug. 19, 2011) (dismissing with prejudice fraud claim where "plaintiff [did] not address the elements of fraud"); *see also Matis v. Golden*, 228 S.W.3d 301, 310 (Tex. App. 2007, no pet.) (quoting *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex. App. 2000, pet. denied)) (holding that an actionable fraudulent "representation must be intended to 'induce action.'"). For these reasons, the court dismisses Taylor's claim that Rothstein Kass is liable for "participation in a fraudulent scheme."

## VIII

The court now considers Rothstein Kass's contention that the statute of repose extinguishes Taylor's fraudulent conveyance claim.

### A

The Texas Uniform Fraudulent Transfer Act ("TUFTA") contains this statute of repose:

> Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought: (1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred; or (3) under Section 24.006(b) of this code, within one year after the transfer was made.

Tex. Bus. & Com. Code Ann. § 24.010 (West 2018).  Unlike a statute of limitations, a statute of repose does not only "procedurally bar an untimely claim, it substantively 'extinguishes' the cause of action."  *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013).  "A statute of repose provides an absolute affirmative defense, and the defendant bears the burden of proving all factual requisites to the statute's application."  *Salgado v. Great Dane Trailers*, 2012 WL 401484, at *3 (S.D. Tex. Feb. 6, 2012) (citing *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996)) (holding that defendant bore burden on statute of repose defense at summary judgment); *see also Hagan v. Mazda Motor Co. of Am., Inc.*, 690 Fed. Appx. 242, 243 (5th Cir. 2017) (per curiam) (holding that, "[u]nder Texas law, a defendant moving for summary judgment on an affirmative defense must irrefutably establish its elements.").

B

Rothstein Kass contends that Taylor's fraudulent conveyance claim is barred because it expired pursuant to the four-year statute of repose.  Rothstein Kass maintains that because Taylor asserts that "amounts paid to Rothstein Kass from December 1, 2013 through April 1, 2014, were fraudulent conveyances and that [Taylor] is entitled to recover those funds under TUFTA," "any fraudulent conveyance claims that could have been pursued . . . were extinguished on or about April 1, 2018."  Ds. Br. 12, 15.

Taylor responds that "by its very terms § 24.005(a)(1) incorporates an alternative 'one-year from discovery' repose time limit beyond the four-year limit."  P. Resp. 11.  He posits that although § 24.010(a) is a statute of repose, "it specifically provides a 'discovery'

period for claims brought under [§] 24.005(a)(1)." *Id.* Taylor maintains that "the limitations period for a § 24.005(a)(1) claim does not begin to run upon the discovery of the transfer alone; instead the claim accrues only when the claimant discovers or reasonably could have discovered the fraudulent nature of the conveyance." *Id.* at 12. Taylor reiterates that the question of when a plaintiff knew or should have known of an injury is one of fact that should not be decided on a motion to dismiss.

Rothstein Kass replies that "this discovery exception should be given no legal effect because a discovery exception is antithetical to a statute of repose." Ds. Reply 6. Rothstein Kass asserts that the Supreme Court of Texas has held that "a statute of repose runs from a specified date without regard to accrual of any cause of action." *Id.* Alternatively, Rothstein Kass argues—for the first time in its reply—that even if the discovery exception is recognized, Taylor failed to bring the claim within one year of the date the claim could reasonably have been discovered.

C

1

The court declines to accept Rothstein Kass's contention that TUFTA's statutory discovery rule should not be recognized as such. The Fifth Circuit has made an "*Erie* guess that the Texas Supreme Court would conclude that section 24.010(a)(1) of TUFTA requires that a fraudulent-transfer claim must be filed within one year after the fraudulent nature of the transfer is discovered or reasonably could have been discovered." *Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d at 195. The Fifth Circuit has explained that "the

legislature, through the enactment of TUFTA's statute of repose provision, has already determined a type of discovery rule applies to TUFTA claims," that is, "the discovery rule is explicitly available by statute[.]" *Janvey v. Romero*, 817 F.3d 184, 189 n.4 (5th Cir. 2016).[8]

## 2

Because the court cannot conclude from the face of the complaint that the discovery rule does not apply to Taylor's claim, the court declines to dismiss Taylor's TUFTA claim. Here, Taylor explicitly pleads that he "did not discover, and could not with the exercise of reasonable diligence have discovered until more recently, [Rothstein Kass's] connection to . . . the fraudulent scheme" and that Rothstein Kass's "wrongful acts were inherently undiscoverable." Compl. 28. He further alleges that he was unable to bring this claim until the Breitling Entities "were 'freed of [Faulkner's] coercion by the court's appointment of

---

[8]To the extent that Rothstein Kass relies on *Nathan v. Whittington* for the proposition that the Supreme Court of Texas has read the discovery rule out of the statute, this court disagrees. The *Nathan* court held that "TUFTA's section 24.010 is a statute of repose" and, for that reason, § 16.064 (which suspends the running of the applicable statute of limitations period where, among other issues, there is a lack of jurisdiction in the trial court where the action was first filed) does not apply to TUFTA claims. *Nathan*, 408 S.W.3d at 876. The *Nathan* court focused its analysis on the first part of the statute—which states that "a cause of action with respect to a fraudulent transfer . . . is extinguished"—to determine that § 24.010 is a statute of repose, and did not interpret the immediately following language—"or, if later, within one year after the transfer . . . was or could reasonably have been discovered by the claimant[.]" Because the *Nathan* court did not address the explicit discovery rule language within § 24.010, the case is inapposite to the question whether § 24.010 contains a viable discovery rule provision. Indeed, the plain language of the statute resolves this question—if the action is brought later than four years after the transfer was made, the plaintiff has one year after the transfer or obligation was or could reasonably have been discovered to bring the claim.

[the] Receiver.'" *Id.* (quoting *Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d at 190). The court concludes that the complaint's allegations are sufficient to avoid dismissal at the Rule 12(b)(6) stage. *See, e.g., Janvey v. Bogar*, 2014 WL 4907074, at *3 (N.D. Tex. Sept. 25, 2014) (Koenig, J.) (holding that discovery rule precluded Rule 12(b)(6) dismissal where plaintiffs pleaded that "they were only able to discover the fraudulent nature of the transfers after [the controlling principal] and others were removed from their posts and after a time-consuming and extensive review of documents.").

IX

The court now turns to Rothstein Kass's contention that the fraudulent conveyance claim must be dismissed because Taylor has failed to allege facts evidencing fraudulent intent.

A

To establish a claim under § 24.005 of TUFTA, a plaintiff must prove that "(1) he is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)). Fraudulent transfer claims under § 24.005(a)(1) require actual intent and are likely subject to Rule 9(b). *See Clapper v. Am. Realty Inv'rs, Inc.*, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018), *recons. denied*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018) (Fitzwater, J.) (explaining that,

although an open question in the Fifth Circuit, several members of this court have applied the enhanced pleading requirements of Rule 9(b) where plaintiffs seek to establish the actual intent of the debtor).

B

Rothstein Kass contends that Taylor has not sufficiently alleged facts to allow the reasonable inference that Faulkner or the Breitling Entities acted with fraudulent intent when they paid Rothstein Kass to conduct the audit. Taylor maintains that he has pleaded sufficient facts to state a fraudulent transfer claim based on actual fraud because he specifically alleges that "Faulkner caused BOG and BECC to make transfers totaling at least $215,000 between December 1, 2013 and April 1, 2014 with actual intent to hinder, delay or defraud creditors of BOG and BECC," and he otherwise details Faulkner's actual fraud on creditors via the Breitling Entities. P. Resp. 13. Taylor further contends that actual intent to defraud creditors is a fact question that should not be considered on a motion to dismiss. Alternatively, Taylor requests leave to amend to properly plead actual fraudulent intent.

C

The court holds that Taylor has not adequately alleged Faulkner's fraudulent intent in his payment to Rothstein Kass. Although Taylor "alleges that Faulkner caused BOG and BECC to make transfers totaling at least $215,000 between December 1, 2013 and April 1, 2014 with actual intent to hinder, delay or defraud creditors of BOG and BECC," P. Resp. 13, such generalized allegations are insufficient under Rule 9(b) to plead actual intent with regard to the specific transaction in question.

Section 24.005(b) of TUFTA lists several factors—commonly known as the "badges of fraud"—that may be considered in determining the presence of actual intent. *In re Soza*, 542 F.3d 1060, 1066 (5th Cir. 2008).[9] "Not all, or even a majority of the 'badges of fraud' must exist to find actual fraud," but when "several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Id.* at 1067 (citing *Roland v. United States*,

---

[9]Section 24.005(b) provides:

In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

838 F.2d 1400, 1402-03 (5th Cir. 1988)).  But because Taylor has not pleaded *any* of the badges of fraud, there are insufficient factual allegations to give rise to a reasonable inference of fraud with regard to Taylor's fraudulent transfer claim.  *See In re: Brown Med. Ctr., Inc.*, 552 B.R. 165, 172 (S.D. Tex. 2016) (holding that plaintiff "failed to state with particularity a claim under TUFTA § 24.005(a)(1)" where plaintiff did not address the badges of fraud); *cf., e.g., Taylor v. Frishberg*, 2012 WL 868718, at *7 (S.D. Tex. Mar. 13, 2012) (finding pleadings sufficient for § 24.005(a)(1) claim where "Receiver's allegations address[ed] several of the factors identified in [§] 24.005(b)."). Because Taylor has not adequately pleaded "actual intent" with regard to the specific transfer of funds to Rothstein Kass, the court dismisses Taylor's fraudulent transfer claim.

## X

The court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead, unless it is clear that the defects are incurable or the plaintiff advises the court that he is unwilling or unable to amend in a manner that will avoid dismissal.  *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)).  Here, Taylor has explicitly moved in the alternative for leave to amend his complaint, *see* P. Resp. 22-23, and it is not clear that the defects in all the claims being dismissed today are incurable.  The court therefore grants

Taylor leave to replead.

*   *   *

For the reasons explained, the court grants in part and denies in part Rothstein Kass's motion to dismiss, and it grants Taylor leave to file an amended complaint within 21 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

February 4, 2020.


_____
SIDNEY A. FITZWATER
SENIOR JUDGE